McCARTHY, Respondent, vs. BEHNKE and others, Appellants.

*October 9—November 7, 1956.*

For the appellants Gordon Dale Behnke and Herman Mutual Insurance Company there was a brief by *Thiel, Allan & Storck* of Mayville, and oral argument by *Robert E. Storck.*

For the appellants Chris Allen Estervig and State Farm Mutual Automobile Insurance Company there was a brief by *Roberts, Roe, Boardman, Suhr & Bjork* of Madison, and oral argument by *Walter M. Bjork.*

For the respondent there was a brief by *Riley, Riley & Pierce* of Madison, and oral argument by *Thomas W. Pierce.*

MARTIN, J.   The accident occurred about 7:40 a. m. on July 26, 1954, at the intersection of West Dayton and North Park streets in Madison. Dayton street, running east and west, was a one-way street for eastbound traffic. Park street, running north and south, carried two-way traffic. The intersection was a main artery for traffic to the center of town and was particularly busy during the time in question. Plaintiff, a Madison policeman, was standing in the center of the intersection directing traffic.

Immediately prior to the accident Behnke, driving south on Park street in the block north of the Dayton street intersection, attempted to park his car along the west curb where parking was prohibited at that hour of the day. His exact position was in dispute, Behnke testifying his car was about nine feet north of the north crosswalk, plaintiff testifying it was about fifty feet north thereof. Plaintiff, seeing Behnke in the act of backing his car to park, shook his head "No." Behnke stated he saw the gesture and also saw plaintiff raise his hands over his head, which he interpreted as a signal for him to proceed into the intersection, which he did.

Estervig, traveling east in the north lane of Dayton street, stopped at the intersection while plaintiff moved traffic on Park street. He testified he was the first car, stopping two or

three feet west of the west crosswalk, though plaintiff testified he thought there were one or two cars ahead of Estervig and a disinterested witness testified he was sure that at least one car proceeded through the intersection ahead of Estervig after the traffic changed.

Plaintiff stated he stopped the traffic on Park street, turned and faced north, noticed Behnke backing to park and shook his head, then waved his left arm for traffic to proceed east on Dayton street.

Estervig testified that he was watching plaintiff and before he started his car he glanced to the right and left and saw nothing, then proceeded into the intersection. When his car reached the center of the intersection it was struck in the left rear by the Behnke car and was spun in a counterclockwise direction, striking the plaintiff.

The first question is as to the negligence of Estervig. Question 3 of the special verdict inquired:

"At or immediately prior to the accident, was the defendant Chris Allen Estervig negligent in the operation of his automobile in any of the following respects:
"(a) As to lookout? Answer: Yes.
"(b) As to proceeding into the intersection under the circumstances then present? Answer: No."

With respect to sub. (a) the court instructed fully as to lookout in general terms. With respect to sub. (b) the follow instruction was given:

"You are instructed that the right to proceed on a traffic officer's signal is not absolute. The driver who has a signal in his favor is entitled to rely upon the favorable signal until it should become apparent to him in the exercise of ordinary care that another vehicle coming from a cross direction was going to proceed in disregard of the signal; but he is entitled, where he has used due care in every respect before entering the intersection, to rely on the favorable signal until it should become apparent to him, in time to enable him to avoid a collision by the exercise of ordinary care, that the driver of

a vehicle approaching the intersection on the intersecting street is going to proceed in disregard of the traffic signal against him. A driver entering an intersection in obedience to a traffic signal in his favor, after having made a thorough observation of the highway, does not have the same obligation to make an observation thereafter that he would have if the traffic was not controlled by traffic officers' signals."

In *Teas v. Eisenlord* (1934), 215 Wis. 455, 461, 253 N. W. 795, one Limp, relying on a green light in his favor, proceeded into an intersection and was struck by the Eisenlord car. A jury found Limp negligent as to lookout upon instructions regarding the general rules of ordinary care in that respect. This court sent the case back for a new trial, saying:

"Whether Limp's conduct measures up to the standard of ordinary care is to be determined by the circumstances present at the time of his action. He was signaled to advance by the proper sign. This signal he was entitled to take into consideration, and, in the absence of manifestations on the part of other drivers which would amount to a declaration of intention to interfere with his right of way, he would be entitled and, in fact, obligated, in the interest of maintaining efficient traffic regulation, to proceed guided by the signals. The jury were to consider on this branch of the case the acts of the appellant Limp, and they ought to have been told with respect to the green lights that if he was otherwise acting with ordinary care, the favorable signals might be relied upon until it became apparent in the exercise of ordinary care that some other person was going to transgress the rules of the road. The slow rate of speed at which Eisenlord was moving and his position in the highway creates a jury question as to whether Limp, in the exercise of ordinary care, was justified in proceeding as he did. The appellant Limp was entitled to have that question passed upon by jurors duly instructed by the court that the right to rely upon the signals existed when there was no other car in the intersection, none approaching it at a dangerous rate of speed, nor anything else appearing which, in the exercise of ordinary care, would cause him to believe his right of way would be interfered with.

*Loizzo v. Conforti,* 207 Wis. 129, 240 N. W. 790. The general rules contained in the instructions did not meet the situation, and the question concerning Limp's negligence ought to have been submitted under instructions which would require the jury to take into consideration the fact that appellant Limp was at an intersection where signal lights existed and that they properly exercised some influence on his conduct."

Here objection was made by Estervig's counsel as follows:

"We further object to the inclusion of both the questions as to Mr. Estervig's lookout, and whether he was negligent in proceeding under the circumstances, in view of the fact that the second one is a duplication of the question of lookout and would necessarily include the question of lookout, and in effect gives the other parties two chances for a finding of negligence regarding lookout, or including lookout."

The trial court stated that "there are other elements that are contained in the second question that may not be in the first as to lookout," and overruled the objection.

It is our considered opinion that, under the *Teas Case,* the only question that should have been submitted was sub. (b). While it is true that the second question contained elements in addition to those involved in the first, it did contain all the elements of the first question. In answering the second question, the jury would necessarily answer the first. The duplication apparently was confusing to the jury and led it to give contradictory answers. The court properly instructed generally on the elements of ordinary care as to lookout as well as the elements of care required by the particular circumstances, but it erred in submitting the question in sub. (a). A new trial must be had. We cannot disregard sub. (a) as mere surplusage, as Estervig urges, since the evidence was such that inferences could be drawn either that he exercised ordinary care as to lookout or that he did not. It is not for us to say that the jury found correctly in the second question rather than the first.

It is further contended that Estervig owed no duty to plaintiff under the facts of this case. The argument has no merit. *Dretzka v. Chicago & N. W. R. Co.* (1934), 216 Wis. 111, 256 N. W. 703, is relied upon, but the case is not in point. There a train struck an automobile and threw it against the flagman. The court pointed out that it was bound by the federal decisions construing the Federal Employers' Liability Act in deciding whether the railroad failed in the performance of any duty it owed to the flagman. It went on to say, however, that if the facts were such as showed that the defendant was negligent as to the car driver and as a consequence of that negligence the plaintiff was injured, the question of its liability to the plaintiff would be determined by a different principle. The duty that Estervig owed the plaintiff in this case is the same duty he owed to anyone who he might reasonably foresee would be injured in an accident to which his failure of ordinary care might contribute.

As to the question of plaintiff's negligence, questions 5 and 6 of the special verdict inquired:

"Question No. 5: At or immediately prior to the accident, was the plaintiff Lawrence McCarthy negligent in the manner in which he gave signals or directions for traffic? Answer: Yes.

"Question No. 6: If you answer question No. 5 'Yes,' then answer this question: Was such negligence a cause of the accident? Answer: No."

Some question is raised with respect to whether plaintiff was negligent as to whistle signals. A search of the record shows that no witness testified that a whistle was blown or heard. Plaintiff, on cross-examination, testified that he had a whistle with him at the time of the accident but did not recall blowing it when Behnke attempted to park. Nor could he say that he blew it to signal traffic after he turned; if he did, he whistled only once; that normally he did not blow

the whistle unless he wanted to attract the attention of a driver who was stopped and should be moving.

In its instructions the trial court read sec. 85.75 (4), Stats., and instructed that signals may be given either manually or by whistle. No instruction should have been given as to whistle signals. The only evidence upon which the jury could have found plaintiff negligent in his manner of signaling was that of Behnke who testified that in proceeding into the intersection he relied on a *manual* signal by the plaintiff which he interpreted as directing him to proceed. The jury found the plaintiff negligent in the manner in which he gave his signals and Behnke's testimony is the only evidence upon which it could so find. It must follow as a matter of law that such negligence was causal; the jury should have so found and compared the negligence of the plaintiff with that of the defendants.

It is also argued on Behnke's behalf that the damages assessed by the jury are excessive. Since a new trial must be had, it is unnecessary to discuss this or other questions which have been raised on the appeal.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

BROADFOOT, J. (*dissenting*). I cannot agree with the result reached in this case by the majority of the court. From the record before us I am unable to see that there is any justification for finding the defendant Estervig negligent in any respect. I cannot agree that the rule of *Teas v. Eisenlord* mentioned in the majority opinion should be extended to a situation where traffic at an intersection is controlled by a traffic officer. Where traffic is controlled by signal lights there is justification for that rule because drivers may attempt to go through an intersection on the amber or orange light. However, when a traffic officer is within an intersection and stops traffic going in one direction and signals for

the traffic in the other direction to start up, drivers should be entitled to rely upon the traffic officer's signal. To force drivers under those circumstances to look in all directions for other drivers who are negligently operating their vehicles is to put an undue burden upon them. This is particularly true where a driver is traveling on a one-way street with two or three lines of cars moving into the intersection.

Nor can I agree that the plaintiff was negligent as a matter of law. In my opinion the defendant Behnke was entirely at fault for the accident.